# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT KNOXVILLE
## Assigned on Briefs October 27, 2004

## STATE OF TENNESSEE v. BARBARA MAUREEN NORWOOD, Alias, BARBARA FOX, Alias, BARBARA WHEELER, Alias, BARBARA AYERS NORWOOD, Alias

**Direct Appeal from the Criminal Court for Knox County**
**No. 75540     Mary Beth Leibowitz, Judge**

---

**No. E2004-00361-CCA-R3-CD - January 7, 2005**

---

The defendant was convicted by a jury of one count of theft over $1,000 but less than $10,000 and three counts of forgery, all Class D felonies, and was sentenced as a Range I, standard offender to three years on the theft count and two years on each of the forgery counts. The two-year sentences were ordered to be served concurrently but consecutively to the three-year sentence, for a total effective sentence of five years. Split confinement was ordered, with forty-five days to be served in the county jail and the remainder of the sentence on probation. In addition, she was ordered to pay $2,233.94 in restitution. The defendant timely appealed, alleging: (1) the evidence is insufficient to support her convictions; and (2) the trial court erred in allowing certain photographs to be admitted into evidence and in sentencing the defendant. Based on our review, we affirm the judgments of the trial court but modify the defendant's sentences to reflect that they are to be served concurrently.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J. C. MCLIN, JJ., joined.

Michael Cabage (at trial) and Julie A. Rice (on appeal), Knoxville, Tennessee, for the appellant, Barbara Maureen Norwood, alias, Barbara Fox, alias, Barbara Wheeler, alias, Barbara Ayers Norwood, alias.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Patricia Cristil and Jennifer H. Welch, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

**FACTS**

In early March 2001, a forged check in the amount of $2,113.94 made payable to "Rogers Cadillac, Inc. or Barbara Fox" and endorsed by "Barbara Fox" was deposited into the defendant's bank account under the name of "Barbara Wheeler" at the TVA Employees Credit Union in Knoxville.[1]  On March 5, 2001, the defendant withdrew $2,000 from that account.  The original check was made out to "Rogers Cadillac, Inc." from Dillard Smith Construction Company.  This episode resulted in the defendant's being convicted of obtaining and exercising control of the check, forging and passing it, as well as forging its endorsement.

Testifying for the State, Teresa Ann Chisolm said she worked in the billing department of Rodgers Cadillac ("Rodgers") in 2001.  At that time, Rodgers Cadillac had a business relationship with Dillard Smith Construction Company by which Rodgers provided mobile fleet services, such as oil changes, to Dillard Smith.  Chisolm sent Dillard Smith an invoice for services in February 2001, and, when she did not receive payment, she sent a "past due" bill the following statement cycle.  Dillard Smith then contacted her and told her the invoice had already been paid.  Dillard Smith had its bank fax a copy of the cancelled check to Chisolm.[2]

Mike Landrith, the chief financial officer for Dillard Smith Construction Company, testified that his company usually paid Rodgers weekly for its services.  He said that while the forged check cleared his bank and was paid to "Rogers Cadillac, Inc. or Barbara Fox," she had no relationship, business or otherwise, with Dillard Smith Construction.  He said that the check his company mailed to Rodgers was made payable solely to Rodgers Cadillac, Inc.

Teresa Chisolm was recalled and said that Barbara Fox had no relationship with Rodgers and there was no reason for her name to be on the check.  She said that Rodgers did not receive the check and that Rodgers endorsed checks it received by rubber stamp, rather than typed endorsements.  She stated that Rodgers maintained post office box number 17066 at the Sutherland Avenue post office.

Tom McCarter of the Knoxville TVA Employees Credit Union testified that his investigation of the forged instrument showed that it had been deposited in the night deposit box and credited to Barbara Wheeler's account although the check had been endorsed by "Barbara Fox."  Normally, checks are credited to a customer's account within thirty minutes of being picked up from the night deposit box. McCarter stated that he recovered a videotape from the branch cameras showing the person who withdrew $2,000 from Wheeler's account.  The tape was played for the jury; however, because of the special equipment needed to properly view the tape at a slower speed, the images played to the jury were apparently "jittery" and not very clear.  Over defense objection, McCarter

---

[1]We note that the correct spelling of the business is "Rodgers Cadillac, Inc."

[2]The back of the check contains the following typewritten notation: "Rodgers Cadillac Inc. Pay to the Order of Barbara Fox Clm #8907064291."  Additionally, it contains the handwritten notation, "Deposit Only 65106421," and the signature of "Barbara Fox."

presented photographic copies of still frames from the videotape that he had printed on his equipment at the credit union. The jury was permitted to view the photographs, which were time and date stamped, although apparently the videotape, as shown on the courtroom equipment, did not appear to bear the time or date of the recording. He identified the defendant as the person in the photographs withdrawing money from the account. He also identified a credit union withdrawal receipt indicating a $2,000 cash withdrawal from Barbara Wheeler's account at 12:36 p.m. on March 5, 2001, the same day the check had been credited to her account. The receipt reflects the signature of "Barbara Wheeler" and the handwritten notation, "TNDL 95246028." On cross-examination, he acknowledged that the credit union had no paperwork concerning the deposit of the check into the night deposit box and no other information about who actually made the deposit.

John Harwell, a criminal investigator with the Knox County Attorney General's Office, testified that he checked Tennessee driver's license number 095246028 in the NCIC/Datamax database, which showed that it was registered to "Bobbie M. Wheeler." His investigation of the name "Bobbie M. Wheeler" revealed five other names associated with that name: Barbara Maureen Norwood, Robbie Maureen Wheeler, Bobbie Maureen Wheeler, Barbara Fox, and Barbara L. Fox.

The defendant testified that her legal name was Barbara Maureen Wheeler and that Norwood was her married name. She said she had "no idea" how the extra money got into her bank account and first found out about it when she called to check her balance in June 2001. She said that she had been the victim of identity theft in "the late eighties" and had lost her purse in 1999. She denied being the person shown in the credit union photographs and denied ever using the names "Fox" or "Ayers." She said that the number on the withdrawal receipt was not her driver's license number and that she had had a state identification card, which had "gone by the wayside," but could not recall the number on the card. She acknowledged maintaining post office box number 10763 at the Sutherland Avenue post office, the same location where Rodgers Cadillac maintained its post office box. She was shown an application for a post office box assigning her box number 10763, with service beginning on January 31, 1985. The application was signed by "Barbara Norwood," who was listed as the "Operations Manager" for Commercial Mailing Services, and "Barbara Wheeler and "B. Ayres Fox" were listed as additional company representatives authorized to accept mail. The defendant said it appeared to be her signature on the application and explained that Barbara Ayers was her "second cousin's ex-wife" and Ms. Fox was a friend of Ms. Ayers, both of whom were associated with Commercial Mailing Services. She said she was at the East Tennessee Baptist Hospital at the bedside of her aunt, who died around 12:30 p.m. on March 5, 2001, the same date and time the money was withdrawn from her account. She said she talked to McCarter on the telephone several times, as well as in person to customer service representatives, but she never met with McCarter in person.

Recalled as a rebuttal witness, McCarter said he told the defendant he needed to talk to her in person, but she never came to meet with him even though he had made it clear that there was a problem with her account at the credit union.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues on appeal that the evidence is insufficient to support her convictions. Specifically, she argues that the State failed to prove her identity as the person who had possessed the check, altered it, deposited it to her account at the credit union, or withdrawn cash from that account.

In Tennessee, the results reached by a jury in a criminal trial are afforded great weight. See State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995). On appeal from a guilty verdict, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This means that we do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979).

To obtain a conviction for theft of property, the State must prove the defendant "obtain[ed] or exercise[d] control over the property" of another "without the owner's effective consent" and "with intent to deprive the owner" of the property. Tenn. Code Ann. § 39-14-103 (1997). Tennessee Code Annotated section 39-14-105 classifies the offense of theft of property as either a misdemeanor or felony based on the value of the property. The defendant's theft is a Class D felony since the value was more than $1,000 but less than $10,000. Id. § 39-14-105(3).

In Tennessee, forgery is defined as follows:

> (a) A person commits an offense who forges a writing with intent to defraud or harm another.
>
> (b) As used in this part, unless the context otherwise requires:
>
> (1) "Forge" means to:
>
> (A) Alter, make, complete, execute or authenticate any writing so that it purports to:
>
> (i) Be the act of another who did not authorize that act;
>
> (ii) Have been executed at a time or place or in a numbered sequence other than was in fact the case; or

-4-

(iii) Be a copy of an original when no such original existed;

(B) Make false entries in books or records;

(C) Issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of subdivision (1)(A); or

(D) Possess a writing that is forged within the meaning of subdivision (1)(A) with intent to utter it in a manner specified in subdivision (1)(C)[.]

Tenn. Code Ann. § 39-14-114 (1997).

The proof at trial showed that a forged check had been deposited into the defendant's account at the TVA Employees Credit Union in Knoxville, the check made payable to and endorsed by "Barbara Fox." John Harwell testified that "Barbara Fox" is a name associated with the defendant in a state computer database, and "Fox" was an authorized user of a post office box also associated with the defendant. Tom McCarter identified the defendant as the person in the photographs withdrawing $2000 from her account. Further, the withdrawal slip was signed by the defendant and contained a license or identification number associated with her. Based on this evidence, a rational jury could have concluded beyond a reasonable doubt that the defendant did "obtain or exercise control over the property" of another, namely, a check made out to Rodgers Cadillac from Dillard Smith Construction Company in the amount of $2,113.94, without the effective consent of the owner and with the intent to deprive the owner of the property. Also, a rational jury could have concluded that the defendant did "[a]lter, make, complete, execute or authenticate" a writing "so that it purport[ed] to be the act of another who did not authorize that act." Additionally, a rational jury could have concluded the defendant did "utter" the forged writing as contemplated in the forgery statute. Accordingly, the evidence is sufficient to support the defendant's convictions for theft and forgery.

### II. Admission of Photographs from Bank Videotape

The defendant contends the trial court erred by allowing into evidence the still photographs, made from the security videotape, of the defendant withdrawing money from her account when the videotape was the "best evidence" in this case.

After attempting to show the security videotape to the jury, apparently unsuccessfully because of an equipment problem, the State questioned McCarter about still photographs he had printed from the videotape using specialized credit union equipment, to which the defendant objected:

-5-

Q      And were you able to stop – stop those pictures and make duplicates of a particular teller's station where . . . the particular withdrawal on that account was made?

A      Yes, I was.

[DEFENSE COUNSEL]: Objection, your Honor. The State – he clearly said he had the technology to bring in the court to play it for them, and they haven't done so. You can slow that down, hum –

THE COURT: Well, I'm not sure that's what he actually said. He said he had special technology to do that. I don't think he had – I don't think that's what he said exactly. But this is also a part of the record is by stopping it and making a still frame. I take it that's what you're talking about.

[THE STATE]: Yes, your Honor.

THE COURT: I have no objection to their looking at that if he made those from this tape.

[THE STATE]: I – I just need to get it auth –

THE COURT: You need to authenticate them.

[THE STATE]:  – authenticated.

Q      I'm going to show you a series of pictures and ask you to identify these pictures.

A      Okay. This is off of that – off of some different cameras there in that particular branch. And the lady there is the one that we followed down to the teller station to withdraw the money.

Q      And so you got that from this tape that we've just looked at –

A      That's correct.

Q      – or the part that we've just looked at?

A      Yes, that's correct.

Q      And what is the time on that tape?

-6-

A        The day is 3-05-01. The time is 12:30:23, and it varies on a –

Q        So is this – are these accurate pictures made from that videotape of the person who came in and the transaction dealing with that particular statement that we just discussed?

A        Yes, it is.

Q        Okay. Who's the person who did that – and tell me if you see her here in courtroom – the withdrawal, the customer there?

A        It's the lady over there.

Q        Okay.

[THE STATE]:   Your Honor, may the record reflect that he's identified Ms. Norwood, the defendant?

THE COURT:  You are identifying the lady over here?  Is that –

A        Yes.

THE COURT:  Okay.  The record will so reflect, General.

[THE STATE]:  And, your Honor, I'd like this as a collective exhibit. Now, I would like – I've got another exhibit to talk about so –

THE COURT:  That would be Exhibit No. --

THE COURT REPORTER:  4.

[THE STATE]:  4.

THE COURT:  – 4, collective.  Okay.  How many pictures are all – with that, so we know?

[THE STATE]:  Ten.

As this exchange shows, while the defendant apparently objected to the introduction of photographs taken from the bank videotape, the basis for the objection appeared to have been that the State should have produced sufficient equipment on which to play the videotape.  In her motion for new trial, the defendant's argument as to the photographs was that the trial court had erred in

admitting as evidence because "[t]he videotape did not have a time and date stamp . . . depicted on the screen [and] [t]he State was unable to explain how the still photographs of the alleged incident had a time and date stamp placed upon them." We cannot conclude from this exchange that the defendant made a "best evidence" objection, as she has on appeal. Additionally, it is not clear that the earlier objection was to the introduction of the ten photographs as exhibits. Accordingly, we conclude that no contemporaneous objection was made, thus waiving the claim. See Tenn. R. App. P. 36(a), Advisory Commission Cmts. ("The last sentence of this rule is a statement of the accepted principle that a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error."); State v. Smith, 24 S.W.3d 274, 279-80 (Tenn. 2000).

Even if we were to treat the issue as not waived, we reiterate the well-accepted principle that the trial court retains broad discretion over the admission of evidence. The admissibility of photographs generally lies within the sound discretion of the trial court and will not be overturned on appeal absent a showing that the trial court abused its discretion. State v. Morris, 24 S.W.3d 788, 810 (Tenn. 2000); State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). As to these photographs, we cannot conclude that the trial court abused its discretion by allowing them into evidence.

### III. Sentencing

The defendant argues that the trial court erred in sentencing her to three years on the theft conviction and in imposing consecutive sentencing. Specifically, she argues that she should have been allowed to provide testimony at the sentencing hearing, that the trial court should have applied a mitigating factor, and that the trial court relied on a nonstatutory ground in ordering her sentences to be served consecutively.

Appellate review of a trial court's sentencing is *de novo* on the record, with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App.1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. If the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported by the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence, even if we would have reached a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). If, however, the trial

court applied inappropriate factors, the sentence's presumption of correctness fails.  See State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992) (citing State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)).

Although arguing that "she was not permitted to make any statements about the offenses themselves without regard to whether or not [she] was offering those statements for sentencing purposes," the defendant makes no references to the court's limiting her testimony at the sentencing hearing.  However, our review of the record shows that the trial court limited the defendant's testimony only when she said she had letters from character witnesses who were not present to testify.  Otherwise, it appears that her testimony was not limited.  Accordingly, this claim is without merit.

The defendant also contends that the trial court erred in refusing to apply a mitigating factor, namely, that her "criminal conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1) (2003).  She argues she should have been sentenced to two years for the theft conviction, which is the presumptive minimum within the range for a Class D felony.  The State responds the trial court considered the proffered mitigating factor, but gave it "little to no weight" in its sentencing determination.

Applying one enhancement factor, the defendant's previous history of criminal convictions or criminal behavior, see Tenn. Code Ann. § 40-35-114(2) (2003), the trial court made the following determinations:

> As to sentencing, . . . [t]here is an enhancement factor – there are two enhancement factors that the State has cited.  One of which I think is valid and usable in this situation, and the other which I think subsumes itself into the offense and the nature of these convictions.  And that is the second count which is the three victims.  And I'm going to get into that in a minute.  The law is that even if you have had a conviction, a bench trial, a jury trial, it does not matter, and you have a judicial diversion.  And in this case, [the defendant], the record would reflect, was placed on judicial diversion for 15 years.  And she was allowed to finish that much earlier.  But would have been on judicial diversion at that time and be under sentence at this point in this case on that matter.  That she gained the benefit of judicial diversion and that that was in fact a finding of guilt.  It indicates previous history of criminal behavior, and I can and will use that to enhance [the defendant].
>
> As to the three victim issue, I'm going to take that up in just a minute when we get to consecutive or concurrent sentencing.  [The defendant] has committed an economic crime.  You're right, [defense counsel].  That is not a crime in which there is violence.  But this has

always been a theft crime. It is not a situation where there was any individual harmed or – several were businesses that were harmed. But certainly her past history that she had a trial and was placed on diversion and ultimately was dismissed in that case, there was a finding of guilt. I don't think that's a mitigation. I don't think that it does anything less than even, but in this case, I think these were the similar nature. That was also a theft charge, if I'm correct. [The defendant] has had an indictment also in the case that's pending before the Court. And so there's been a probable cause finding there. And she has a number of minor misdemeanors also which would indicate a criminal behavior nature. So I think that I can in fact use that for enhancement, and I don't find mitigation.

As a Range I, standard offender, the defendant was subject to sentences ranging from two to four years for her Class D felony convictions. See Tenn. Code Ann. § 40-35-112(a)(4) (2003). The presumptive sentence for a Class D felony is the minimum sentence in the range if there are no enhancement or mitigating factors. Id. § 40-35-210(c). Procedurally, the trial court is to enhance the sentence within the range based on any applicable enhancement factors, and then reduce the sentence within the range as appropriate based on any mitigating factors. Id. § 40-35-210(e). The weight to be afforded an enhancement or a mitigating factor is left to the trial court's discretion as long as the trial court complies with the purposes and principles of the 1989 Sentencing Act, and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

The trial court enhanced the defendant's sentence for the theft conviction to three years but did not enhance any of the forgery sentences. The presentence report reflects that the defendant was convicted of disorderly conduct and driving without a license in 2000 and was placed on judicial diversion in 1991 for uttering a forged document and fabricating evidence. Additionally, the presentence report reflects that the defendant was charged with forgery on July 17, 2000, and was scheduled for trial on that charge on February 9, 2004. Based upon the review of the record, we conclude that the trial court was correct in enhancing the defendant's sentence based upon previous criminal convictions.

As to the mitigating factor, we agree with the defendant that just because the underlying conviction is an economic or property crime does not automatically mean that the mitigating factor of no bodily injury is not applicable. See State v. Daniel James Cosgrove, No. M2001-02127-CCA-R3-CD, 2002 WL 31528547 (Tenn. Crim. App. Nov. 15, 2002), perm. to appeal denied (Tenn. Mar. 10, 2003). We cannot conclude that the trial court abused its discretion in refusing to apply this mitigating factor.

Finally, the defendant argues the trial court erred in imposing consecutive sentencing based on there being three separate victims, contending that none of the factors listed in Tennessee Code Annotated section 40-35-115 are applicable to her. Specifically, the court found that the defendant

had a previous history of criminal activity and that the crime had more than one victim. The record shows that the trial court utilized the defendant's criminal record to enhance her sentence for the theft conviction pursuant to Tennessee Code Annotated section 40-35-114, not to impose consecutive sentences. The fact that more than one victim was involved is another enhancement factor listed in section 40-35-114, but the trial court did not use that factor in enhancing the defendant's sentence. Instead, the trial court used that factor to impose consecutive sentences, stating, "The two years will be consecutive to the original three years, and that is because there have been three separate victims which [the defendant] took advantage of." Nothing in Tennessee Code Annotated section 40-35-115(b) allows a trial court to impose consecutive sentences based on the fact that more than one victim was involved. As that was the only factor the trial court utilized in imposing consecutive sentences, we modify the defendant's sentences to reflect that they are to be served concurrently.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the defendant's convictions but modify her sentences to reflect that they are to be served concurrently, for a total effective sentence of three years.

_____
ALAN E. GLENN, JUDGE